NO. 12-03-00333-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS

MARGIE CLARK PERCIVAL,                         §     APPEAL FROM THE 273RD
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,                                  §     SABINE COUNTY, TEXAS 
APPELLEE




MEMORANDUM OPINION
            Appellant Margie Clark Percival pleaded guilty to aggravated assault with a deadly weapon. 
A jury sentenced her to imprisonment for twenty years and assessed a $10,000 fine. In three issues,
Appellant asserts that the trial court abused its discretion in permitting testimony by two witnesses
who Appellant contends violated the Rule and also urges that she was denied effective assistance of
counsel. We affirm.

Background
            Appellant was charged by indictment with the attempted murder of Michael Nethery. On
September 9, 2003, she pleaded guilty to the lesser included offense of aggravated assault without
an agreed punishment recommendation from the State. A hearing was held on punishment.
            At the punishment hearing, 51-year-old Nethery testified that he and Appellant had dated and
lived together for approximately eighteen months, but had broken off their relationship. 
Approximately three weeks after the breakup, on November 17, 2002, Nethery was at his trailer
vacuuming, when he turned around to see that Appellant had come in the back door of the trailer. 
He got them soft drinks and then sat down in the living room with Appellant. After they talked a few
minutes, Appellant accused him of going out with other women. When Nethery denied it, Appellant
jumped up from her chair and pulled a pistol, saying that he “was going to be a dead man.” She said
that she “had ten shells and all of them were for [Nethery].” Nethery turned in the swivel chair he
was sitting in and ran for the bathroom. 
            Appellant followed him and shot him in the back as he entered the bedroom. She then shot
him a second time in the back as he entered the bathroom. Nethery fell between the toilet and the
outer wall of the bathroom, and Appellant shot him a third time. She left the room, but returned a
few seconds later and shot him a fourth time in the back. She walked away a second time, but
returned to shoot him again. This time, the bullet hit the back of his left arm and traveled through
his arm, striking one of his fingers. Appellant told Nethery that “Ginger”


 was going to be next and
then left the bathroom.
            Nethery managed to get up from the floor. Appellant heard him moving and ran back toward
the bathroom. Nethery slammed the bathroom door in her face and locked it. He grabbed a .357
pistol he kept in the bathroom closet and fired it through the back of the closet. He shot again
through the wall near the door, aiming toward the living room. Then, Nethery pushed the screen
from the bathroom window and fired shots into the air, hoping to get a neighbor’s attention. 
            After firing the shots, Nethery opened the door and saw that Appellant was gone. His phone
was missing from its usual place and a recliner had been placed against the front door. After moving
the chair, he got outside and fell to the ground. He crawled to the main road where someone stopped
to help him.
            Pineland Police Chief Jamie Brashear testified that he responded to the call for help. Upon
arriving at Nethery’s home, he saw Nethery lying at the end of the driveway. Nethery told Brashear
that Appellant had shot him and that she might be on her way to Ginger White’s house to shoot her. 
Brashear found Nethery’s .357 revolver on the driveway. He examined the house and made photos
of bullet holes in the house. Brashear also found the charger cord for the telephone outside on the
ground near the back door, but did not find a phone. He did not find any shell casings in the house
to match the bullets and bullet holes. 
            Texas Ranger Danny Young interviewed Appellant, who admitted shooting Nethery. 
However, she claimed that Nethery pulled his weapon first. Appellant said that Nethery threatened
to kill her and her sons and that Nethery fired two shots and ran toward the bedroom. She also said
she fired two or three shots and followed him to the bedroom door. She told Young that she shot
Nethery one more time when he went into the closet where she knew he kept guns. Young testified
that the physical evidence at the scene supported Nethery’s account and not Appellant’s. 
            Appellant testified on her own behalf. She stated that she had no felony convictions, she had
family in the area, and she was sixty-nine years old. Although she claimed that she had not
committed any violent acts in the past, she testified that a man whom she had dated previously, Ottis
Melton, had twisted her arm and torn her rotator cuff. Appellant said that Melton is the reason she
illegally carried a gun with her. She said he was trying to kill her and was “in the courtroom today.” 
            Appellant claimed to have a fuzzy memory about the shooting. She denied having amnesia,
but contended she was in a state of shock and could not recall exactly what had happened. Appellant
had no explanation for the discrepancies between her account and the physical evidence. She
admitted she did not call for help and that she told her niece she might have killed him.
            Various character witnesses testified that Appellant’s reputation for truth, veracity, and
peacefulness was good. Among those witnesses was her granddaughter, Marissa Taylor. Taylor
testified that she had talked to Nethery four times since the offense. She claimed that Nethery told
her he had gotten what he deserved and wished to drop the prosecution of Appellant. To rebut that
claim, the State recalled Nethery to the stand. Defense counsel objected because Nethery, who was
subject to the Rule, had been in the courtroom during the defense’s case. The trial court allowed
Nethery to testify, but limited his testimony to rebuttal of Taylor’s unforeseen testimony. Nethery
denied having the conversation described by Taylor.
            The State then called Ottis Melton as a rebuttal witness. Melton testified that Appellant’s
reputation for truth, veracity, and peacefulness was bad. He claimed that Appellant once told him
that she slept with a gun in her bed to shoot him. Melton denied twisting Appellant’s arm and
tearing her rotator cuff. After Melton’s testimony, both parties closed. Appellant then objected to
Melton’s testimony because he had been in the courtroom during the testimony of the other
witnesses. The trial court found that Melton was not sworn with the State’s witnesses and did not
violate the Rule. The court further found that Melton was allowed to testify “strictly for rebuttal.” 
Further, the court advised Appellant that he would allow her the same opportunity as the State, to
reopen to produce any evidence available to rebut any unforeseen State’s evidence. 
            On September 10, 2003, the jury assessed Appellant’s punishment at imprisonment for
twenty years and a $10,000 fine. This appeal followed.

The Rule
            In her first issue, Appellant asserts that the trial court abused its discretion by not excluding
the rebuttal testimony of Nethery and Melton given in violation of Texas Rule of Evidence 614. 
Applicable Law
            Texas Rule of Evidence 614 (the “Rule”) provides in relevant part that “[a]t the request of
a party the court shall order witnesses excluded so that they cannot hear the testimony of other
witnesses . . . .” Tex. R. Evid. 614. The purpose of the Rule is to prevent the testimony of one
witness from influencing the testimony of another. Martinez v. State, 867 S.W.2d 30, 40 (Tex.
Crim. App. 1993). The trial court must invoke the Rule if requested to do so. Tex. R. Evid. 614. 
When the Rule is invoked, a witness should not hear testimony in the case or talk to any other person
about the case without the court’s permission. White v. State, 958 S.W.2d 460, 462 (Tex.
App.–Waco 1997, no pet.). After the Rule has been invoked, enforcement of the Rule is within the
court’s discretion. Guerra v. State, 771 S.W.2d 453, 474 (Tex. Crim. App. 1988). A violation of
the Rule may not be relied upon for reversal of the case unless it is shown that the trial court abused
its discretion in allowing the violative testimony. Id.
            Violations of the Rule fall into two main categories: (1) witnesses who have been sworn or
listed as witnesses in the case and either hear testimony or discuss another’s testimony and (2)
persons who were not intended to be witnesses and are not connected with the case-in-chief, but who
have, due to events during trial, become necessary witnesses. See id. at 475-76. We perform a two-step analysis in determining whether a trial court has abused its discretion in allowing a violation of
the Rule. First, we ascertain what kind of witness was involved. Id. at 476. If the witness was one
who had no connection with either the State’s case-in-chief or the defendant’s case-in-chief and who,
because of a lack of personal knowledge regarding the offense, was not likely to be called as a
witness, no abuse of discretion can be shown. Id. 
            Under the second step of the analysis, we must determine (1) whether the witness actually
conferred with or heard the testimony of another witness without court permission and (2) whether
“the witness’s testimony contradict[ed] the testimony of a witness he actually heard from the
opposing side or corroborate[d] the testimony of another witness he actually heard from the same
side on an issue of fact bearing upon the issue of guilt or innocence.” Loven v. State, 831 S.W.2d
387, 399 (Tex. App.–Amarillo 1992, no pet.). If both of the above criteria are met, the trial court
abused its discretion. Id. 
Michael Nethery
            The record reflects that Nethery was a State’s witness who had testified earlier in the case. 
After Appellant rested her case at punishment, the State recalled Nethery to the stand to rebut the
testimony of a defense witness, Marissa Taylor. Appellant objected because Nethery had been in
the courtroom during the defense’s case. In response to the trial court’s questioning, the State
responded that it was surprised by Taylor’s testimony regarding a conversation she claimed to have
had with Nethery. Based on the State’s surprise, the court allowed Nethery to testify, but limited
such testimony to rebutting Taylor’s testimony. 
            Nethery testified that he did not have the conversation Taylor described and, more
specifically, that he did not tell Taylor that he deserved what Appellant did to him. Nethery’s
testimony comprises half of one page of the record and was limited to rebutting the surprise
testimony of Taylor. Further, Nethery’s rebuttal testimony did not bear on Appellant’s guilt or
innocence. See Marx v. State, 953 S.W.2d 321, 338-39 (Tex. App.–Austin 1997, aff’d, 987 S.W.2d
577 (Tex. Crim. App. 1999) (trial court did not abuse its discretion in allowing witness who had
violated “the rule” to testify when such testimony was solely limited to rebuttal and did not bear on
the defendant’s guilt or innocence). Moreover, whether Nethery heard Taylor’s testimony is
irrelevant since he could not have offered rebuttal testimony without having been told the substance
of Taylor’s testimony. 
            There is no evidence that Taylor’s testimony influenced Nethery’s denial of the conversation
she attributed to him. See Bell v. State, 938 S.W.2d 35, 50-51 (Tex. Crim. App. 1996). Thus, we
conclude that the trial court did not abuse its discretion in allowing Nethery’s rebuttal testimony. 
See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh’g) (a trial court
does not abuse its discretion unless its ruling is outside the zone of reasonable disagreement). 
Ottis Melton
            Appellant also complains that the trial court abused its discretion when it allowed Melton to
testify. We first noted that it is not apparent from the record that Melton had been sworn or placed
under the Rule. Melton was called to testify as a rebuttal witness by the State regarding a matter that
did not concern the case-in-chief. Although Melton had been in the courtroom during testimony
from other witnesses, Appellant did not object when the State called him to testify. In fact,
Appellant did not object until after close of the evidence. Because Appellant did not timely object
to the trial court’s allowing Melton to testify, she failed to preserve the issue for review. See Tex.
R. App. P. 33.1(a); Weyandt v. State, 35 S.W.3d 144, 154 (Tex. App.–Houston [14th Dist.] 2000,
no pet.). Moreover, even if the issue had been preserved, Appellant has not shown any abuse of
discretion. Melton had no connection with either party’s case-in-chief. He had no personal
knowledge of the offense and was not likely to be called as a witness. His rebuttal testimony became
necessary due to events during trial. Therefore, no abuse of discretion can be shown. See Guerra,
771 S.W.2d at 476. We overrule Appellant’s first issue. 

Ineffective Assistance of Counsel
            In her second and third issues, Appellant argues that her trial counsel’s representation
constituted ineffective assistance of counsel. Because these issues are related, we address them
together.
Applicable Law
            In addressing a claim of ineffective assistance of counsel, we follow the two-pronged test in
Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984); Hernandez v.
State, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Under the first prong of the Strickland test,
an appellant must show that counsel’s performance was “deficient.” Strickland, 466 U.S. at 687,
104 S. Ct. at 2064; Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). “This requires
showing that counsel made errors so serious that counsel was not functioning as the ‘counsel’
guaranteed the defendant by the Sixth Amendment.” Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. 
To be successful, an appellant must show that counsel’s representation fell below an objective
standard of reasonableness. Id., 466 U.S. at 688, 104 S. Ct. at 2064; Tong, 25 S.W.3d at 712. 
            Under the second prong, an appellant must show that the deficient performance prejudiced
her defense. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Tong, 25 S.W.3d at 712. The
appropriate standard for judging prejudice requires an appellant to show that “there is a reasonable
probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been
different.” Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Tong, 25 S.W.3d at 712. A reasonable
probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S.
at 694, 104 S. Ct. at 2068.
            Review of a trial counsel’s representation is highly deferential. Tong, 25 S.W.3d at 712. We
indulge in a strong presumption that “counsel’s conduct falls within the wide range of reasonable
professional assistance.” Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Appellant bears the
burden to overcome the presumption that, under the circumstances, the challenged action might be
considered sound trial strategy. Id.; Tong, 25 S.W.3d at 712. Moreover, any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate
the alleged ineffectiveness. Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Failure
to make the required showing of either deficient performance or sufficient prejudice defeats the
ineffectiveness claim. Id. Appellant must prove both prongs of the Strickland test by a
preponderance of the evidence in order to prevail. Tong, 25 S.W.3d at 712.
Guilty Plea
            Appellant contends that her trial counsel was ineffective when he allowed her to plead guilty
to aggravated assault, a lesser included offense of attempted murder. Specifically, Appellant argues
that because the range of punishment for attempted murder was the same as the range of punishment
for aggravated assault, her trial counsel was ineffective.
             To demonstrate ineffective assistance of counsel in the context of a guilty plea, Appellant
must show that counsel’s advice was outside the range of competence demanded of attorneys in
criminal cases and, if not, that there is a reasonable probability that, but for counsel’s errors, she
would not have pleaded guilty and would have insisted on going to trial. See Ex parte Morrow, 952
S.W.2d 530, 536 (Tex. Crim. App. 1997). There is nothing in the record revealing what advice, if
any, counsel gave Appellant that influenced her decision to plead guilty. Therefore, Appellant has
not overcome the presumption that her counsel’s conduct was within the range of reasonable
professional assistance. This argument is without merit.
Competency Motion
            Appellant also complains that her trial counsel withdrew her motion for a competency
hearing. The record reveals that counsel filed a motion to determine Appellant’s competency
because Appellant was hospitalized and taking a battery of medications. After the motion was filed,
Dr. Edward Gripon, a forensic psychologist, examined Appellant. Dr. Gripon advised defense
counsel that there was no basis to go forward on the competency motion because he would find
Appellant competent to stand trial. Appellant’s counsel then withdrew the motion.
            Appellant complains that her counsel’s decision to withdraw the motion was ineffective
assistance of counsel. However, it is well settled that counsel is not obligated to present frivolous
motions or objections. Wood v. State, 4 S.W.3d 85, 91 (Tex. App.–Fort Worth 1999, pet. ref’d). 
This argument is also without merit.
Medical and Psychological History
            Appellant next asserts that her trial counsel failed to provide the jury with evidence of her
lengthy and significant medical and psychological history. The record is silent as to counsel’s trial
strategy. We have no evidence concerning whether trial counsel considered admitting Appellant’s
medical and psychological history and, if so, the reasons he decided not to. Thus, we are unable to
determine that the failure to raise those issues in the trial court constitutes ineffective assistance of
counsel. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Appellant has failed to
show that her counsel’s performance fell below the objective standard of reasonableness. Further,
even if we agreed that trial counsel’s performance was deficient, Appellant has failed to make any
showing that she was prejudiced as a result. She has failed to show that there is a reasonable
probability that the result of the proceeding would have been different but for the alleged error made
by counsel. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Thus, Appellant has failed to
demonstrate that counsel was ineffective for failing to introduce her medical and psychological
history. Jackson, 877 S.W.2d at 771. 
Photographs of Nethery’s Injuries
            Appellant asserts that counsel should have objected to State’s Exhibits 27, 28, and 29,
photographs of Nethery’s injuries. The record is silent as to the reasons underlying Appellant’s trial
counsel’s decision not to object to the photographs. As required by Jackson, we must presume
counsel’s actions and decisions were reasonably professional and were motivated by sound trial
strategy. See id. Appellant has the burden of rebutting this presumption by presenting evidence
illustrating why her trial counsel did what he did. See id. Appellant cannot meet this burden if the
record does not affirmatively support the claim. See Jackson v. State, 973 S.W.2d 954, 955 (Tex.
Crim. App. 1998) (inadequate record on direct appeal to evaluate whether trial counsel provided
ineffective assistance). Here, the record does not contain evidence concerning trial counsel’s reasons
for choosing the course he did. Thus, Appellant cannot overcome the strong presumption that her
counsel performed effectively. Consequently, Appellant has failed to show that counsel was 
ineffective for failing to object to the photographs. 
Post-Trial Representation
            Finally, Appellant asserts that she was denied effective assistance of counsel because she did
not have representation during the thirty days following her trial. She contends that in the
intervening time between the final judgment and the order appointing appellate counsel, there was
no activity on her behalf; specifically, no motion for new trial was filed. 
            A defendant has a right to file a motion for new trial. See Tex. R. App. P. 21.4. Filing a
motion for new trial is a prerequisite to presenting errors on appeal only when necessary to adduce
facts not in the record. See Tex. R. App. P. 21.2. The filing of a motion for new trial extends the
appellate time limits in which to give notice of appeal from thirty days to ninety days after
sentencing, see Tex. R. App. P 26.2(a)(2), and it is often used exclusively for this purpose. See
Oldham v. State, 977 S.W.2d 354, 361 (Tex. Crim. App. 1998). Substantively, motions for new trial
have been used primarily for claims of newly discovered evidence or jury misconduct. See id. 
            Appellant did not file a motion for new trial. In her appellate brief, Appellant references two
issues in a footnote that she contends she might have set forth, and benefitted from, in a motion for
new trial. However, she failed to show that had she filed a motion for new trial, she would have
been entitled to a new trial. See Jordan v. State, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994). 
Appellant has not claimed that her appeal or other rights were injured due to her failure to file a
motion for new trial. She simply claims instead that she was without effective counsel during the
time limit for filing the motion for new trial. 
            The State pointed out that since there is no evidence in the record that her trial attorney was
released, Appellant was still represented by counsel. A similar situation occurred in Oldham. See
Oldham, 977 S.W.2d at 361. After being convicted and sentenced, Oldham filed a pro se notice of
appeal and affidavit of indigency. There was no activity on Oldham’s case between Oldham’s pro
se filing and the court’s appointment of appellate counsel thirty-three days later. The appellate court
determined that Oldham had been denied effective assistance of counsel during the time for filing
a motion for new trial. The court of criminal appeals reversed the appellate court, holding that the
facts presented “[did] not rebut the presumption that the appellant was represented by counsel and
that counsel acted effectively.” Id. at 363. 
            Likewise, in the instant case, the record does not show any activity between the time
Appellant filed her pro se notice of appeal and indigency affidavit and the time the trial court
appointed appellate counsel. However, this does not rebut the presumption that Appellant was
represented by counsel and that counsel acted effectively. Id. Also, as in Oldham, there is nothing
in the record to suggest that Appellant was not counseled by her attorney regarding the merits of a
motion for new trial and that she rejected any suggestion that she file the motion. Id. When a
motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the
appellant and rejected. Id. Moreover, the fact that Appellant filed a pro se notice of appeal is
evidence that she was informed of at least some of her appellate rights. Id. Therefore, absent a
showing in the record to the contrary, we presume that Appellant was adequately counseled
regarding her right to file a motion for new trial. See Smith v. State, 17 S.W.3d 660, 663 (Tex.
Crim. App. 2000). Accordingly, we hold that Appellant has failed to overcome the presumption that
she was adequately represented by counsel during the time for filing a motion for new trial. 
Compliance with Strickland
            Appellant failed to satisfy the first prong of the Strickland test by showing that her trial
counsel’s performance was deficient. Therefore, we need not address the second prong. We
overrule Appellant’s second and third issues.





Disposition
            Having overruled each of Appellant’s issues, we affirm the judgment of the trial court.
 
                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice


Opinion delivered June 8, 2005.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.






(DO NOT PUBLISH)